UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CRIMINAL CASE NO. 10-59-GFVT-CJS
CIVIL CASE NO. 14-7331-GFVT-CJS

UNITED STATES OF AMERICA                                        PLAINTIFF


v.                              **REPORT AND RECOMMENDATION**


TOMMY BOSHEARS                                                 DEFENDANT

* * * * * * * * * *

On January 16, 2014, Tommy Boshears, *pro se*, filed a Motion To Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (R. 103). On March 5, 2014, after obtaining an extension of time, the United States filed a Response to Defendant's § 2255 Motion. (R. 108). After also obtaining an extension of time,[1] Defendant filed a Reply on April 10, 2014. (R. 113). Having all relevant documents before the Court, the matter is ripe for consideration and preparation of a Report and Recommendation. 28 U.S.C. § 636(b). For the reasons stated below, it will be herein **recommended** that Defendant's § 2255 Motion be **denied**.

I.      **FACTUAL AND PROCEDURAL HISTORY**

In November 2009, Defendant was an inmate at the United States Penitentiary in McCreary County, Kentucky. (R. 77, ¶ 3). Defendant's trial counsel argued at his sentencing that a group at the prison controlled a constant stream of heroin that flowed into the prison. (R. 62, at 3; R. 100,

---

[1]The Court provided Defendant an extension of time to file a Reply after it appeared he incorrectly interpreted the Government's Response to be the Court's decision on his § 2255 Motion. (*See* R. 110, R. 111).

at 13-15).  After giving Defendant heroin for some time, Defendant became indebted to this group. (*Id*.).  Defense counsel argued that to pay for his debt, Defendant was told to call his mother and tell her to expect information on how he was to repay this debt.  Defendant's mother received a package with instructions on how to get the items in the package into the prison.  (*Id*.).

On or about November 14, 2009, while visiting her son at the penitentiary, Defendant's mother took a juice bottle from Defendant, looked around to see who was watching, put it to her mouth and returned it to Defendant.  (R. 77, at ¶ 3).  The Defendant took the bottle, put it to his mouth and swallowed.  (*Id*)  Having observed this suspicious behavior, officers of the facility placed Defendant under continuous surveillance in a "dry cell" where he eventually passed five balloons containing heroin.  *Id*.

On November 18, 2010, a federal grand jury returned an Indictment, charging Defendant with one count of possessing contraband (heroin) while an inmate of a prison, a violation of 18 U.S.C. § 1791(a)(2).  (R. 1).  The Indictment also charged his mother for providing Defendant with the heroin.  (*Id*.).  On April 20, 2011, Defendant signed a Plea Agreement with the United States, wherein he agreed to plead guilty to being in possession of heroin while an inmate.  (R. 77).  Although the Agreement does not specifically so state, it is undisputed that Defendant agreed to plead guilty in exchange for the Government agreeing to enter into a binding plea agreement with Defendant's mother for a sentence in the range of 0 to 6 months of incarceration, if accepted by the Court.[2]  (R. 98, at 21; R. 108, at 9).

---

[2]The Record reflects Defendant's mother was looking at a sentencing range of 46 to 57 months based upon a calculated offense level of 23 and a criminal history category of I.  (R. 100, at 75).

2

In Defendant's Plea Agreement, the parties outlined the sentencing recommendation to be presented to the Court.  It included a base offense level of 12 and a recommendation that Defendant receive a decrease in his offense level for his acceptance of responsibility.  (R. 77, at ¶ 5).  No agreement was made as to Defendant's criminal history category, and Defendant agreed he would not seek a departure for a mitigating role.  (*Id*. at ¶¶ 6-7).  Defendant also waived his right to appeal and collaterally attack the guilty plea and conviction, but he reserved his right to appeal his sentence.  (*Id*. at ¶ 8).  The Agreement does not discuss the parties' positions on any specific sentencing enhancements, but it does provide that the parties "may object to or argue in favor of other calculations."  (*Id*. at ¶ 5).  The Agreement also clearly provides "[t]his recommendation does not bind the Court."  (*Id*.).  Defendant has attached to his Motion a April 21, 2011, email from the Assistant United States Attorney ("AUSA") to his trial counsel wherein the AUSA recites he will not seek an enhancement as to either Defendant.  (R. 103, at 9).

At the rearraignment hearing, the District Court placed Defendant under oath and questioned him to insure he understood the terms of the Agreement.  (R. 98).  The Court specifically asked Defendant whether anyone had made him any promises or threatened him in any way.  (*Id.* at 21-24). Defendant answered that he had been promised that if he pled guilty, the Government would enter into a binding plea agreement with his mother that would result in her receiving a minimal sentence. In response, the Court explained that it was not bound to accept the binding plea agreement as to his mother.  The Court further explained that there were circumstances under which his mother might not receive the sentence Defendant thought she was going to receive.  (*Id*. at 22-23).  Defendant stated he understood.  (*Id*.).

3

The Court also explained to Defendant that while the Agreement contained recommendations as it relates to Defendant's sentence, the Court was not bound by those recommendations. (R. 23). Defendant stated he understood. (*Id*.). The Court further explained to Defendant that the Probation Office would prepare a presentence investigation memorandum, updating a prior Presentence Investigation Report ("PSR"), and would provide the Court with a recommended sentence based on the Sentencing Guidelines. The Court told Defendant that if he and his counsel disagreed with the probation officer's report and/or sentencing recommendation, he would have an opportunity to object, but also explained that there was no way to know at the rearraignment how the Court would ultimately rule on any objections. The Court also made it clear that while his counsel may have told him what counsel anticipated his sentence would likely be, the Court was not bound by any recommendation. If the Court sentenced him to a longer term than Defendant was anticipating, it was not a basis for Defendant to change his plea. (*Id*. at 29). Defendant again stated he understood. (*Id*.).

After this colloquy, the Court concluded Defendant was fully competent and capable of entering an informed plea, and he understood the nature of the charges and the consequences of entering the plea. (R. 98, at 34-35). Thus, the District Court found Defendant's plea of guilty was knowing and voluntary. (*Id*.).

On September 22, 2011, Defendant appeared before the District Court for sentencing. (R. 100). During the hearing, the District Court addressed several objections raised by Defendant to the PSR (*Id*. at 12-26). Counsel withdrew the objection regarding the calculation of the weight of the

heroin, after being told that the weight of the heroin used to determine the base offense level was not extrapolated, but was the actual weight of the heroin contained in the balloons.[3]  (R. 100, at 12).

The Court also heard argument on Defendant's objection to the Probation Office's recommendation of a two-point sentencing enhancement for aggravating role under United States Sentencing Guideline § 3B1.1(c) for Defendant's conduct in enlisting the assistance of his mother to commit the crime.  (R. 62, at 8; R. 100, at 13-19).  Defendant insisted, through counsel, that he should not be held to have had an aggravating role because it was not his scheme; instead, he was being pressured by other inmates, under threat of violence, to participate in their scheme.  (*Id.*).  The Government argued it agreed with the Probation Office and thought the circumstances of Defendant involving his mother in the crime justified the enhancement.  (R. 100, at 15-16).  The Court ultimately found, as explained more fully below, that the enhancement applied to the circumstances at hand.

Defendant also objected to the two-level increase in his offense level for distribution of a controlled substance in a prison under United States Sentencing Guideline § 2D1.1(b)(4) because he did not distribute the heroin.  (R. 62, at 7-8; R. 100, at 20-22).  Again, the Government supported the Probation Office's finding that the enhancement was applicable, and the District Court agreed there was a sufficient showing Defendant intended for the heroin to be distributed to other inmates. (*Id.*).

---

[3]Defendant had originally objected to the Probation Office's calculation of the weight of the heroin because the amount was extrapolated from the weight of one balloon.  (R. 2, at 7; R. 100, at 12-13). However, at sentencing, the Government reported that all five balloons had been weighed and the weight used for sentencing purposes was the actual weight of the heroin in each of the balloons. (R. 100, at 13).

Further, Defendant argued that the Government breached its Agreement with him because the AUSA agreed not to seek enhancements to his offense level, but then made arguments during the sentencing hearing that the enhancements recommended by the Probation Office were appropriate. (R. 100, at 23-24). The Court heard this argument and found that the enhancements were not sought by the Government, but were proposed by the Probation Office. (*Id*. at 24-25). The Court noted the agreement between the parties was that the prosecution would not seek enhancements, not that the prosecutor would oppose any enhancements raised by the Probation Office or the Court. (*Id*.).

Lastly, counsel argued that Defendant was being subject to double punishment because the Bureau of Prisons ("BOP") had also imposed punishment on him as a result of this offense. Specifically, Defendant lost a year of good-time credit, served four months in solitary confinement, had his visitation revoked indefinitely, and endured other facility restrictions and punishments. (R. 62).

The District Court ultimately found both enhancements applied, which left Defendant with an offense level of 15, a criminal history category of VI, and a Sentencing Guidelines range of 41 to 51 months. The Court sentenced Defendant to a 48-month term of imprisonment (R. 83; R. 100, at 70). Defendant filed an appeal challenging the District Court's determination of his Sentencing Guidelines range. Specifically, he challenged the District Court's determination that the enhancements for having a leadership role and distributing a controlled substance in prison applied to him.[4] On October 17, 2013, the Sixth Circuit affirmed the District Court's judgment. (R. 101).

---

[4]Defendant also argued on appeal that the District Court failed to address his objection regarding double punishment because the BOP also punished him.

6

On January 16, 2014, Defendant filed the pending § 2255 Motion presenting five claims:  1) counsel tricked him into believing that he would not receive any enhancements; 2) he was threatened by the prosecution that if he did not plead guilty his mother would get a hefty sentence; 3) counsel did not use the case law Defendant provided to argue against the enhancements; 4) the District Court improperly enhanced his offense level by making findings of fact that were not supported by any evidence; and 5) trial and appellate counsel failed to raise arguments that he instructed them to make. (R. 1, at 4-5).

## II.    ANALYSIS

Under § 2255, a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  *See* § 2255(a).  A § 2255 motion does not have to be founded on constitutional error or even federal law.  *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006)).  However, to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (*citing Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).  To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process.  *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F. App'x 361 (6th

Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005); *McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

Therefore, a defendant must allege in his § 2255 motion that:  (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (*citing Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).  A defendant must prove his allegations by a preponderance of the evidence.  *Pough*, 442 F.3d at 964.

In this case, as noted above, Defendant has raised five claims in his § 2255 Motion.  For analytical discussion purposes, these claims can be grouped as being premised upon alleged sentencing error, prosecutorial misconduct, and ineffective assistance of counsel.

### A.    Claim Alleging Sentencing Error was Reviewed on Direct Appeal

Defendant asserts that the District Court improperly found two enhancements applied to increase his offense level, despite the fact no evidence was presented to support the Court's findings. (R. 5).  Defendant appealed the District Court's application of § 3B1.1(c) and § 2D1.1(b)(4) of the United States Sentencing Guidelines. (R. 101; *United States v. Boshears*, No. 11-6239 (6th Cir.), R. 48 (Appellate brief)). The Sixth Circuit affirmed the District Court's decision to impose the enhancements, finding the facts of the case supported their application.  (R. 101).  Specifically, the Sixth Circuit held as follows:

> Boshears first argues that the district court improperly increased his Guidelines range by two levels under USSG § 3B1.1(c) for having a leadership or management role in the criminal activity. Under that section, the district court may increase a defendant's total offense level by two levels if he was an organizer, leader, manager, or supervisor in any criminal activity of one or more participants. USSG § 3B1.1(c),

comment[] (n.2); *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009). The defendant qualifies for a managerial enhancement under § 3B1.1(c) if he "exercised decisionmaking authority, recruited accomplices, received a larger share of the profits, was instrumental in the planning phase of the criminal venture, or exercised control or authority over at least one accomplice." *Vasquez*, 560 F.3d at 473; *see also United States v. Lalonde*, 509 F.3d 750, 765-66 (6th Cir. 2007).

In this case, the § 3B1.1(c) enhancement applies to Boshears because he recruited an accomplice to the criminal activity. While incarcerated in a federal penitentiary, Boshears became addicted to heroin and found himself indebted to the group of prisoners that provided him with the drugs. In order to pay off this debt, the group instructed Boshears to have his mother smuggle drugs into the prison. At Boshears's direction, his mother subsequently visited him and passed several balloons of heroin to him by drinking from the same bottle, thereby allowing him to ingest the balloons. After witnessing this activity, prison officials held Boshears under continuous surveillance until he excreted the balloons of heroin. By bringing his mother into the criminal offense, Boshears's actions were sufficient to justify the § 3B1.1(c) enhancement. *See United States v. Castilla-Lugo*, 699 F.3d 454, 461 (6th Cir. 2012) (recruiting an accomplice and organizing their entrance into the criminal activity warrants the managerial enhancement), *cert. denied*, 133 S. Ct. 1511 (2013). While Boshears argues that he was under duress when he engaged in this activity, he fails to provide any authority for the proposition that this fact would provide a basis for not applying this enhancement.

Boshears next argues that the district court improperly increased his Guidelines range by two levels under USSG § 2D1.1(b)(4) (formerly § 2D1.1(b)(3)). Under that section, an enhancement is appropriate if the object of the criminal activity was distribution of a controlled substance in a prison or correctional facility. Boshears does not maintain that he intended to use this heroin for his personal use; rather, he clearly intended to give it to his accomplices for distribution in the prison. Although Boshears again asserts that he acted under duress, this fact does not excuse his actions or make the enhancement inapplicable.

(R. 101, at 2-3).

In this sentencing error claim of his § 2255 Motion, Defendant attempts to relitigate the same issues that were rejected by the Sixth Circuit, i.e. whether the District Court properly applied the enhancements to increase Defendant's offense level under the Guidelines. (*Id*.). It is well established that issues raised and decided on direct appeal cannot be relitigated in a § 2255 motion

9

absent an intervening change in the law or exceptional circumstances. *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *United States v. Gallion*, No. 07-39, 2014 WL 2218361, at *15 (E.D. Ky. May 27, 2014) (arguments rejected on direct appeal cannot be relitigated in a § 2255 motion). Defendant does not argue an intervening change in the law, nor has he demonstrated any exception to the general prohibition against relitigation in a § 2255 motion.  Thus, the arguments set forth in this claim may not be reviewed again here.

Even assuming Defendant's argument in his § 2255 Motion is not precisely the issue raised on appeal, it would be deemed waived by his failure to raise the issue on appeal.  *See Jones*, 178 F.3d at 796 (well established that an argument not raised on direct appeal is waived) (*citing Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996)).  "Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows:  (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime."  *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (*citing Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted)); *see also United States v. Thornton*, No. 3:05-cv-184, 2014 WL 2815346, at *3 (S.D. Ohio June 23, 2014) ("Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process; mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver.") (*citing Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996)).  Again, Defendant has not made such a showing here and he makes no argument of actual innocence.

Moreover, even if the Court were to consider Defendant's argument, it lacks merit.  Factual findings that impact only the advisory Guidelines range do not have to be submitted to a jury and

10

proven beyond a reasonable doubt; such findings can be made by a judge and by a preponderance of the evidence. *See United States v. Jackson,* No. 14-1400, 2015 WL 64625, at *3 (6th Cir. Jan. 5, 2015) (district court did not err in imposing sentencing enhancements to increase a Guidelines range based on facts not submitted to jury); *United States v. Toney*, No. 13-6432, 2014 WL 5839781, at *3 (6th Cir. Nov. 12, 2014) (judicial fact-finding that only increases advisory Guidelines range is permissible) (*citing Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151 (2013)); *United States v. Louchart*, 579 F. App'x 492, 496 (6th Cir. 2014), *petition for cert. filed*, No. 14-8031 (U.S. Dec. 9, 2014) ("the Supreme Court's decision in *Alleyne* did not change the preponderance of the evidence standard for fact finding under the sentencing Guidelines") (*quoting United States v. Cooper*, 739 F.3d 873, 884 (6th Cir), *cert. denied*, __ U.S. __, 134 S. Ct. 1528 (2014)); *United States v. Alexander*, 467 F. App'x 355, 367-68 (6th Cir. 2012) (facts used to calculate recommended sentence under Guidelines do not need to be found by a jury) (*citing United States v. Booker*, 543 U.S. 220 (2005)).

Here, Defendant's counsel argued at sentencing that Defendant did not devise the plan to bring heroin into the prison. Instead, it was a scheme devised by other inmates that Defendant maintains he was coerced to participate in by threat of harm, and he therefore should not be subject to the enhancement for having a leadership role. (R. 100, at 17-18). In holding that a preponderance of the evidence supported a finding Defendant exercised control or authority over at least one accomplice, the District Court quoted from the transcript of the rearraignment of Defendant's mother wherein she stated, under oath, "I went to visit my son in USP McCreary and he directed me to bring five balloons and put them in a juice bottle." (R. 100, at 19) (*quoting* R. 69, at 31-33). Based on this

statement the Court found that the two-level enhancement under U.S.S.G. § 3B1.1(c) applied.[5] Despite Defendant's statement to the contrary, he was not required to have admitted the facts underlying the enhancement for it to be applicable. *See Louchart*, 579 F. App'x at 495. Instead, as in *Louchart*, the District Court properly considered the statement of his co-defendant in finding, by a preponderance of the evidence, that the enhancement applied. (*Id.*).

Similarly, a preponderance of the evidence supported the District Court's finding that Defendant intended for the heroin he ingested to be distributed to another inmate. The PSR provides that after being advised of his *Miranda* rights, the Defendant stated he needed the heroin to pay a debt he owed in prison. (R. 87, at 5). While Defendant did not intend to personally sell the heroin to other inmates, he intended to provide it to another to pay off a debt. (*See* R. 100, at 21; *United States v. Boshears*, No. 11-6239 (6th Cir.), R. 48, at 23-24 (Appellate brief)). Thus, a preponderance of the evidence supports the District Court's application of the enhancement, the Court finding that Defendant intended to pay a debt by providing the heroin to another. *See cf. United States v. Carlton*, No. 13-31177, 2014 WL 6912498, at *2 (5th Cir. Dec. 10, 2014) (court did not clearly err in application of U.S.S.G. § 2D1.1(b)(4) wherein it erroneously found witness testified that defendant needed drug to repay debt in prison).

---

[5]Defendant argues that his sentence was wrongfully enhanced because hearsay was used to support the findings of fact. Even if true, this argument lacks merit. The Sixth Circuit has held that sentencing hearings are not subject to the Federal Rules of Evidence, and hearsay statements are admissible as long as they bear "some minimal indicia of reliability." *See United States v. Wilson*, 485 F. App'x 109, 111-12 (6th Cir. 2012) (*citing United States v. Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007), and *quoting United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir. 1992)). "To successfully challenge hearsay evidence relied upon by the sentencing judge, 'the defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence.'" *Wilson,* 485 F. App'x at 112 (*quoting Silverman*, 976 F.2d at 1992). Defendant has not met his burden.

12

As discussed above, a preponderance of the evidence supported the District Court's factual findings that the enhancements were appropriate. Because the findings did not impact either a minimum or maximum mandatory sentence, the factual issues did not need to be submitted to a jury. *Cooper,* 739 F.3d at 884. Accordingly, this claim, even if not previously litigated or waived, lacks merit.

Further, to the extent Defendant generally argues that his sentence was improper because it exceeds the range for the base offense level that he agreed to in his Plea Agreement, this argument also fails. The Court meticulously explained to Defendant during his rearraignment proceeding that it was not bound by any sentencing recommendations made in the Plea Agreement. (R. 98, at 23, 26-30). Defendant responded that he understood the District Court was not bound by the parties' agreed recommendations. (*Id*.). "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (explaining that failing to hold defendants to their statements would "render[ ] the plea colloquy meaningless" and "condon[e] the practice by defendants of providing untruthful responses to questions during plea colloquies") (*quoting Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("[s]olemn declarations in open court carry a strong presumption of verity"). Accordingly, any claim raised by Defendant's general argument in this regard, even if not waived, lacks merit because the record is clear that Defendant was informed of the consequences of his plea, and he stated he understood the District Court was not bound to sentence him within the range recommended in the Plea Agreement. (R. 98, at 23, 26-30).

**B.      Claim Alleging Prosecutorial Misconduct has been Waived**

Defendant argues that the prosecution coerced him into pleading guilty by threatening "to give [his] mother a lot of time if [he] didn't plead guilty."  Defendant did not raise this issue on appeal and thus it is waived.  *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 1999) (It is well established that § 2255 is not a substitute for a direct appeal) (*citing United States v. Frady*, 456 U.S. 152, 165 (2003)).  A claim of constitutional error not raised on direct appeal may be reviewed in a § 2255 motion only if defendant can establish cause and prejudice or actual innocence.  *See Bousley*, 523 U.S. at 22-23.  Defendant has not set forth any argument to demonstrate cause and prejudice for failing to raise this claim on appeal, nor has he made a claim of actual innocence.

Nevertheless, even if the Court were to consider the merits of this claim, it would fail.  A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of his plea.  *Brady v. United States*, 397 U.S. 742, 755 (1970).  Here, Defendant argues that his plea was involuntary because he was coerced by threats of a long sentence for his mother if he did not enter a guilty plea.

The Supreme Court has reserved judgment on the constitutional implications of a prosecution's offer during plea negotiations of lenient treatment for someone other than the defendant to whom the plea offer is directed.  *See Bordenkircher v. Hayes*, 434 U.S. 357, 368 n.8 (1978).  The Sixth Circuit, however, has upheld pleas against assertions that they were coerced by offers of lenient treatment to a loved one where the government had probable cause to prosecute the loved one.  *See Doe v. United States*, 85 F.3d 628, 1996 WL 250444 (6th Cir. 1996) (table decision) (no evidence prosecutor lied about defendant's father's situation to get defendant to enter plea); *United States v. Usher*, 703 F.2d 956, 958 (6th Cir. 1983) (finding totality of circumstances

supported finding that defendant's plea was knowing and voluntary where prosecution would only agree to a reduced sentence for defendant's wife if defendant pled guilty); *see also United States v. Eversole*, No. 6:05-34-DCR, 2010 WL 420067, at *2 (E.D. Ky. Feb. 1, 2010) (even if government made threats to prosecute defendant's wife as part of plea negotiations, such threats were based on probable cause).

Thus, the mere fact that Defendant Boshears's decision to enter a guilty plea was based on a promise that the prosecution would enter into a binding plea agreement with his mother does not, without more, make it a coerced plea. (*Id.*). It is not improper to include in plea negotiations a benefit of a reduced sentence to a third party for whom probable cause exists for the government to prosecute. *See Usher*, 703 F.2d at 958; *Doe*, 1996 WL 250444, at *5; *Eversole*, 2010 WL 420067, at *2; *Martinez v. Roggenbuck*, No. 2:12-cv-11778, 2014 WL 2711917, at *5 (E.D. Mich. June 16, 2014) ("mere fact Petitioner's plea was based, in part, on a promise that his wife would not be prosecuted does not make it without more coercive") (collecting numerous cases from other circuits). In such situations, however, special care must be taken to ascertain the voluntariness of a defendant's guilty plea because a guilty plea made in consideration of lenient treatment to another poses a greater danger of coercion than does a purely bilateral plea negotiation. *See Usher*, 703 F.2d at 958 (*citing Hayes*, 434 U.S. at 364 n.8).

Here, the totality of the circumstances supports a finding that Defendant's plea was knowing and voluntary. Defendant was familiar with the criminal justice system. Both Defendant and his mother were indicted in this action and were represented by separate counsel. Defendant had the opportunity to and did confer with counsel during the plea process and rearraignment proceeding, and he stated he was satisfied with counsel's representation. The District Court advised Defendant

15

of the constitutional rights he was giving up by pleading guilty, the statutory maximum term he faced, and the terms of the Plea Agreement and its consequences, including that the Court was not bound by the recommendations contained in his Agreement nor bound to accept his mother's binding plea agreement.  (*See* R. 98).  Defendant stated he understood the terms of his Agreement, and no one had threatened him or promised him anything other than that his mother would be offered a binding plea agreement.  Defendant provided a factual basis for his plea and admitted his guilt to the charge.  (*Id.*).

Further, the record supports a finding that a factual basis existed to prosecute Defendant's mother (*see* R. 69, at 31-33).  All involved understood that in exchange for Defendant pleading guilty, the Government would enter into a binding plea agreement with Defendant's mother that, if accepted by the District Court, would provide his mother with a significantly reduced sentence (*see* R. 98, at 15-17).  The District Court was very thorough in its questioning of Defendant to make sure his plea was knowing and voluntary and that he understood the Court was not bound to accept his mother's binding plea agreement.  The District Court engaged Defendant in the following colloquy:

COURT: Has anybody made any promises to you that are not included in this written plea agreement?

DEFENDANT: No.

COURT: Has anybody said to you, "If you'll sign this plea agreement, I'll guarantee that you'll get a particular sentence?"

DEFENDANT: No.

COURT: Has anybody said to you, "If you'll sign this plea agreement, I'll guarantee that your mother will get a particular sentence?"

DEFENDANT: Yes.

COURT:              Okay.  I want to talk to you a little bit about that. What has -- who has said that to you?

DEFENDANT:          Mr. Storms [mother's counsel] and Ms. Price [Defendant's counsel].

COURT:              Okay.  So this relates to the discussion that they've had - - that you've had with co-counsel who's representing your mom; is that correct?

DEFENDANT:          Yes. Yes, it is.

COURT:              Okay. Well, as I understand it, the intent is for your mother to enter into what's a binding plea agreement. Okay?

DEFENDANT:          Yes.

COURT:              And what that means, that if I accept the binding plea agreement, then I will be required to impose the sentence that is included as part of the plea agreement –

DEFENDANT:          Right.

COURT:               -- okay? But you need to understand that I'm not required to accept a binding plea agreement, and that I don't make a decision about whether or not to accept that plea agreement until I've looked at the sentencing materials.  If I were to choose not to accept the binding plea agreement, your mother would be able to withdraw her guilty plea.  She would not have to plead guilty, so she would not be bound by that.  And then she could choose to go to trial, if she wanted to do that.  So I understand why you would perceive there to be a guarantee as it relates to your mother, but do you understand how that process would work?  And there is a circumstance in which she might not receive the sentence that you think she's going to receive today.  Do you understand that?

DEFENDANT:          Yes.

COURT:              Do you want to discuss that with your lawyer?

DEFENDANT:          Yes.

17

| | |
|---|---|
| COURT: | Okay. |
| | Okay. Do you have any questions about that? |
| DEFENDANT: | No. |
| COURT: | Okay. So you understand how that could unfold? |
| DEFENDANT: | Yes. |
| . . . | |
| COURT: | Okay.  Has anybody threatened you or coerced you in any way to sign the plea agreement? |
| DEFENDANT: | Just the binding plea that's with my mother.  That's it. |
| COURT: | Just the issue with your mom.  They've said, "If you'll enter into this plea agreement, then we'll provide a binding plea." But you understand that if I accept it, that I'm bound by it, but I don't have to accept it.  You understand that? |
| DEFENDANT: | Yes. |
| COURT: | Okay.  All right.  So nobody's threatened you in any way? |
| DEFENDANT: | No. |
| COURT: | Okay.  You're going to plead guilty to these charges because you're in fact guilty of the charges that you're going to plead to today? |
| DEFENDANT | Yes. |

(R. 98, at 21-24).

The record does not support Defendant's claim that his plea was coerced and involuntary.

The mere assertion that Defendant agreed to plead guilty so that the prosecution would enter into a

binding plea agreement with his mother that would result in her receiving a minimal sentence is not,

without more, sufficient to establish an involuntary or coerced plea since probable cause existed to

charge his mother and, in fact, she was indicted. *Usher*, 703 F.2d at 958; *Martinez*, 2013 WL 2711917, at *5. As demonstrated above, the District Court took great care to ascertain the voluntariness of Defendant's plea. Defendant has not demonstrated that his plea was unknowing. To the contrary, the totality of the circumstances reveals that Defendant's plea was knowingly and voluntarily made with the intention that his mother would be the beneficiary of his plea. Accordingly, Defendant's claim of prosecutorial misconduct, even if not waived, lacks merit.

### C.  Claims Alleging Ineffective Assistance of Counsel Lack Merit

Defendant also argues essentially three claims of ineffective assistance of counsel. Specifically, Defendant asserts counsel was ineffective for: 1) tricking him to believe that he would not get any enhancements; 2) not using the case law he provided to argue against the enhancements; and 3) not presenting his arguments to the Court. For the reasons that follow, Defendant has not established his ineffective assistance of counsel claims.

The Supreme Court has held that '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To meet this standard, the Court set forth a two-part test. First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id.* at 687-88. In reviewing this prong, the lower court is to apply a deferential standard, i.e. there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. If a defendant satisfies the first prong, he must also establish that counsel's deficient performance prejudiced him. *Id.* at 691-94. Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 694.  Defendant must establish both prongs by a preponderance of the evidence.  *Pough*, 442 F.3d at 964.  Thus, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment.  *Id.* at 691.

In the guilty plea context, where a defendant is represented by counsel and enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (*quoting McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  While the performance prong of the *Strickland* test remains the same, to establish prejudice the Defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (*quoting Hill*, 474 U.S. at 58-59).  Both prongs of the test must be met for a finding of ineffective assistance, but courts are not required to conduct an analysis under both; if a court finds a defendant cannot meet one prong, it need not address the second prong.  *Strickland*, 466 U.S. at 697.

Here, Defendant has failed to establish the prejudice prong for any of his ineffective assistance of counsel claims because he has not asserted in his Motion that but for the alleged errors of counsel, he would not have pled guilty.  *See Hill,* 474 U.S. at 58-59.  Further, given the facts concerning the strength of the Government's case and the benefit Defendant was receiving by pleading guilty, i.e. the prosecution's agreement to seek minimal time for his mother, it is unlikely that Defendant would have insisted on going to trial.  Nevertheless, the Court will consider each of

20

Defendant's arguments of ineffective assistance of counsel despite his failure to properly assert prejudice.

### 1.      Counsel was not ineffective in arguing against the enhancements

Defendant argues that counsel provided ineffective assistance by tricking him into believing that he would not receive any enhancements.   Defendant maintains that counsel told him the prosecutor agreed not to seek any enhancements if Defendant pled guilty, and counsel assured him that an email from the prosecutor to that effect "would hold up in court." (R. 103, at 4).  Defendant argues that despite counsel's assurances that he would receive a sentence within the range of 21-30 months, the District Court applied the enhancements and sentenced him to a 48-month term of incarceration.

The April 2011 email thread, attached to Defendant's Motion, purports to be an exchange of emails between the AUSA and defense counsel.  (R. 103, at 9).  In defense counsel's April 21, 2011, email to the AUSA, she states that she met with Defendant for almost three hours and he has agreed to the Plea Agreement with the exception of a few changes regarding the waiver of appeal rights.  (*Id*.).  Defense counsel also referenced a conversation she had with the AUSA regarding the application of the distribution enhancement and reiterated that the AUSA stated in their conversation that he was not going to seek any enhancements.  The AUSA's April 21, 2011, response confirmed defense counsel's understanding by stating, "I will not seek an enhancement as to either defendant." (*Id*.).  Defendant and his counsel signed the Plea Agreement on April 20, 2011, the day before the email exchange.  (R. 77).  The Plea Agreement provided that the parties "may object to or argue in favor of other [Sentencing Guidelines] calculations."  (*Id*. at ¶ 5).  At the rearraignment, the Court

asked Defendant whether anyone had made any promises not included in the Agreement, and Defendant confirmed that they had not.  (R. 98, at 21).

As the District Court explained to Defendant at the rearraignment proceeding, (*see* R. 98, at 28-30), the Probation Office prepared a PSR that recommended a sentencing range based on an application of the Guidelines to the facts.  (R. 87).  In the PSR, the Probation Office recommended a two-point enhancement for Defendant's leadership role in the scheme under U.S.S.G. § 3B1.1(c) and a two-point enhancement for distribution under U.S.S.G. § 2D1.1(b)(4).

To the extent Defendant is arguing that trial counsel was ineffective for not arguing against the enhancements and in not informing the Court of the prosecution's promise not to seek enhancements, the record does not support such a finding.  Instead, counsel raised substantive arguments to the Probation Office's recommendation of enhancements by filing written objections, and arguing her points in both a sentencing memorandum and at the sentencing hearing.  (*See* R. 62; R. 87; R. 100).  In addition, defense counsel also argued at the sentencing hearing that the prosecution should have remained silent with respect to the appropriateness of the enhancements because the AUSA agreed that he would not seek any enhancements.

Specifically, at the sentencing hearing, the following exchange occurred:

Ms. Price:          My client is insistent.  During our negotiations with regard to the proffer, not the plea agreement - of course, they go hand in hand, particularly in this case - Mr. Gentry informed both defense counsel that he would not seek an enhancement for distribution.  And it's in an e-mail, I have a copy of the e-mail.  My client would like to put that on the record.  I know it probably doesn't -- I know that regardless, Probation has come up with this enhancement, but I do think that Mr. Gentry's argument should have been kept silent on that issue and I should have said that from the beginning, and I just

22

|  | completely spaced out on it.  So I'm sorry.  But it may not make any difference regardless. |
|---|---|
| COURT: | So the record is clear, you've correctly,  Ms. Price, articulated the procedural posture which we're now talking about, not an enhancement that was sought by the government, but one that was proposed by the United States Probation Office that was bolstered by the government.  You didn't seek it, but you support it now.  I don't know if there's anything you want to say in response. |
| MR. GENTRY: | No, I don't recall the e-mail, I don't recall the conversation. Was this raised in the motion that was filed with the Court? |
| MS. PRICE: | It was not raised at the time, because I didn't feel like since it was part of the plea agreement, that it was something appropriate to bring.  But, however, my client feels very strongly that Mr. Gentry should have remained silent on the issue of enhancement for distribution. |
| COURT: | Well, it doesn't sound like the representation was that they would oppose it, that the government would oppose it.  The government didn't say we don't think it should apply, just simply said we do not seek it as part of the formal sentencing process.  They did not.  You can assure your client that the government didn't seek it.  It was independently determined to be applicable by the Probation Office.  So certainly that concern is not really an objection. |
| MS. PRICE: | I don't know if I should make a motion to strike Mr. Gentry's argument from the record, if that would be appropriate.  I know it's not a here nor there. |
| COURT: | Well, again, I don't think we have to resolve that particular issue.  I'm not going to -- I'll let you decide what motions you need to make and I'll decide whether to uphold them or not. I think I've established an independent record despite what the excellent arguments on both sides have been.   My decision is that it's appropriate and required by the Probation Office. |

(R. 100, at 23-24). Thus, the record supports a finding that counsel raised Defendant's objection that the AUSA agreed not to seek the enhancement, but the Court found that the enhancements were determined applicable by the Probation Office, not the AUSA.[6]  *See United States v. Shows*, 797 F. Supp. 539, 541 (S.D. Miss. 1992), *aff'd*, 988 F.2d 1211 (5th Cir. 1993) (the failure of the AUSA to object to enhancements in the presentence investigation report was not a seeking of an enhancement). Thus, Defendant has not established that counsel was deficient in this regard.

To the extent Defendant is arguing that counsel promised him that he would not receive any enhancements and would be sentenced in the range of 21-30 months, Defendant provides no specific factual allegations to support his claim and the record dispels any such promise. As set forth above, the Court specifically asked Defendant if anyone had made him any promises not included in the written plea agreement. (R. 98, at 21). Defendant responded "no." (*Id.*). The Court followed up and asked if anyone had guaranteed him a particular sentence. (*Id.*). Again, Defendant responded "no." (*Id.*). Under these circumstances and upon this record, the Court finds Defendant is bound by his statements made under oath in the plea colloquy. *See Blackledge*, 431 U.S. at 73-74; *Ramos*, 170 F.3d at 565-66; *Baker*, 781 F.2d at 90.

---

[6]As the District Court explained, the prosecution did not seek the enhancements, but instead the enhancements were recommended by the Probation Office. Defendant argues that the Probation Office and the prosecution are in effect the same entity because they both work for the Department of Justice. Defendant is misinformed. The Probation Office is part of the Judicial Branch and serves the Court. The United States Attorney's Office is part of the Executive Branch and, like Defendant, is a party before the Court. *See United States v. Gaines*, 888 F.2d 1122, 1124 n.3 (6th Cir. 1989) (rejecting argument that probation officer bound by non-binding stipulation in a plea agreement. "A probation officer operates under the supervision of the court, not the U.S. Attorney."); *see also Shows*, 797 F. Supp. at 541 (". . . United States probation officer is not 'the government' as meant in the plea bargain in this case and cannot therefore be charged with breaching the plea agreement by presenting the presentence investigation report containing a sentencing [enhancement]).

Moreover, even assuming counsel had provided deficient performance in this regard, there is no showing of prejudice. The Court explained at the rearraignment hearing that it was not bound by any recommendation in the Plea Agreement, and Defendant stated he understood. (*Id*. at 23). The Court also explained that the Probation Office would prepare a presentence memorandum which would contain a recommended sentence based on the United States Sentencing Guidelines and Defendant would have an opportunity to file objections to that recommendation. The Court noted, however, that it might or might not agree with Defendant's objections and that until the process is complete "we cannot know with any certainty what the recommended sentence will be." (*Id*. at 28-29). In addition, the Court explained that while counsel may have offered Defendant a prediction of what the recommended sentence might be, if it turns out counsel was wrong in her prediction, it was not a basis for withdrawing his plea. (*Id*. at 29). Defendant responded that he understood. Lastly, the District Judge at rearraignment made clear that the Court was not bound by any recommendation, that the Guidelines are merely advisory, and that if the Court determined a sentence above the recommendation was appropriate, this was not a basis for Defendant to withdraw his plea. Defendant stated he understood. (*Id*. at 30).

Based on this colloquy, Defendant cannot establish prejudice because he knew before he entered a guilty plea that the Court was not bound by any Agreement between Defendant and the prosecution with regard to an appropriate sentence. (R. 98, at 23, 26, 28-30). He also understood the District Court's ultimate sentence could be different from what counsel may have predicted. (*Id*. at 29-30). The Sixth Circuit has held that there is no prejudice for counsel's mistaken advice when the trial court informed defendant otherwise and defendant confirmed his understanding. *See Ramos*, 170 F.3d at 565-66 (ineffective assistance of counsel claim lacked merit where no prejudice from

counsel mistakenly telling defendant he was eligible for shock probation where the court conducted thorough plea colloquy and asked if he understood that he was not eligible for probation under any circumstances). Where the court has meticulously conducted a proper Rule 11 colloquy, a defendant is generally bound by his statements in response to the court's inquiry. *Baker*, 781 F.2d at 90. The record here supports a finding that the District Court's full and thorough plea colloquy cured any mistaken statements counsel may have made that Defendant would be sentenced within a particular range. (*See* R. 98, at 28-30) (presiding District Judge explained it was not bound by any recommendations and will await receipt of sentencing materials before making a sentencing decision).

Even if the District Court's full and thorough colloquy did not cure any prejudice caused by the alleged deficient performance of counsel, Defendant did not assert that but for counsel's alleged assurances of a particular sentencing range, he would not have pled guilty but would have insisted on going to trial. This failure is fatal to his ineffective assistance claim; such an assertion is required to properly allege a claim of ineffective assistance of counsel in the context of a defendant's decision to plead guilty. *See Hill*, 474 U.S. at 60. Thus, Defendant has failed to allege "prejudice" as required to succeed on this claim.

Further, the Court finds it was not reasonably probable that but for counsel's alleged errors Defendant would have insisted on going to trial, even had Defendant properly alleged prejudice. First, the email Defendant relies on contains a statement from defense counsel that Defendant agreed to the Plea Agreement without any indication it was conditioned upon the United States not seeking a distribution enhancement. To the contrary, Defendant signed the Plea Agreement the day before the email exchange he cites to, thus he could not have relied on the AUSA's representations in the

26

email in making his decision to enter into the Agreement. (R. 77). Further, the United States' proof in this case was virtually unassailable: Defendant and his mother were recorded by surveillance cameras meeting in the institution's visitor's area where his mother took a bottle from defendant, looked around to see who was watching, put it to her mouth, and returned it to Defendant. (R. 87). Defendant then took the bottle, put it to his lips and swallowed. (*Id.*). Prison officials placed Defendant in a dry cell where he passed five balloons containing heroin. (*Id.*). Given the strength of this evidence against Defendant and his mother, it is not reasonably probable that but for counsel's alleged errors Defendant would have insisted on going to trial. Accordingly, Defendant's ineffective assistance of counsel claim on this point is without merit.

### 2.    Counsel was not ineffective for not citing case law Defendant provided

Defendant argues his counsel did not use "*United States v. Blakely,*"[7] the case law he provided counsel, to argue that the enhancements were improper.[8] According to Defendant, Justice Thomas stated in *Blakely* that any time an enhancement nearly doubles a defendant's sentence, it must be presented to the jury. (R. 103, at 4). *Blakely*, however, does not stand for the proposition advanced by Defendant.

In *Blakely,* the Supreme Court held any fact that increases a Defendant's sentence beyond a state's legislatively mandated guideline, even if within a statutory maximum for the offense, must

---

[7]Defendant has not provided the Court with a citation to the case that he argues counsel should have used to argue that a jury, not a judge, must determine whether facts exist to support imposing sentence enhancements under the Guidelines. However, based upon the context of his argument and the case name he provided, the Court assumes, as did the United States, that he is referring to *Blakely v. Washington*, 542 U.S. 296 (2004).

[8]Defendant does not articulate whether his claim is challenging the performance of trial counsel or appellate counsel. Regardless, as discussed herein, the claim fails as to both counsel.

be submitted to a jury and proven beyond a reasonable doubt or admitted by the defendant.[9]  The majority in *Blakely* specifically declined to consider whether its holding applied to factual determinations that increased a sentencing range under the United States Sentencing Guidelines, stating "the Federal Guidelines are not before us, and we express no opinion on them." *Blakely,* 524 U.S. at 305 n.9.  *Blakely* does not specifically apply to this federal case, where Defendant was sentenced under the United States Sentencing Guidelines.

Nevertheless, even assuming Defendant had asked counsel to use *United States v. Booker,* 543 U.S. 220 (2005), to challenge the District Court's factual findings increasing his offense level under the Sentencing Guidelines, his claim fails.  In *Booker*, the Supreme Court extended its decisions in *Apprendi* and *Blakely* to the then-mandatory Federal Sentencing Guidelines.  *Booker*, 543 US. at 226.  Importantly, however, the Supreme Court in *Booker* invalidated those portions of the Sentencing Reform Act that made the United States Sentencing Guidelines mandatory, rendering them merely advisory in order to preserve the constitutionality of the remaining provisions.  *Id*. at 245-46.

In light of *Booker*, the Sixth Circuit has made it clear that a federal district judge is authorized during sentencing to make findings of fact by a preponderance of the evidence to determine an advisory Guidelines range, so long as the resulting sentence does not increase the punishment for the criminal offense beyond the prescribed maximum sentence the court can impose

---

[9]Prior to *Blakely*, the Supreme Court had held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  In *Blakely*, the Supreme Court explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  *Blakely*, 542 U.S. at 303.

based on the jury's verdict or a defendant's admissions.[10]  *See, e.g., United States v. Alexander*, 467 F. App'x 355, 367-68 (6th Cir. 2012) (*quoting United States v. Mickens,* 453 F.3d 668, 673 (6th Cir. 2006)); *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010); *United States v. Kerestes*, 375 F. App'x 509, 513 (6th Cir. 2010); *United States v. Roberge*, 565 F.3d 1005, 1012 (6th Cir. 2009); *United States v. Harris*, 308 F. App'x 932, 940 (6th Cir. 2009); *United States v. Sexton*, 512 F.3d 326, 330 (6th Cir. 2008); *United States v. Cheney*, 299 F. App'x 479, 480-81 (6th Cir. 2008).

Here, Defendant was subject to a 20-year statutory maximum term of imprisonment and no mandatory minimum sentence applied.  The District Court explained to Defendant at his rearraignment proceeding that the Guidelines were nonbinding (*see* R. 98, at 30), and the District Court's discussion on the matter at sentencing makes it clear that the District Court treated the Guidelines as advisory, repeatedly referring to the Guidelines range as a "recommendation." (*Id.*; *see also* R. 100, at 64-65).  The District Court's factual findings regarding the application of the two enhancements at issue did not increase the 20-year statutory maximum, but only the recommended Guidelines range.  In fact, Defendant's ultimate sentence of 48 months of imprisonment was well below the statutory maximum of 20 years.

Accordingly, the judicial fact-finding that Defendant complains of here–that the presiding District Judge found the enhancements of U.S.S.G. §§ 3B1.1(c) and 2D1.1(b)(4) applied to him–affected only the Court's determination of his offense level under the advisory Sentencing Guidelines.  That determination did not result in the imposition of a sentence greater than the prescribed 20-year statutory maximum or increase a statutory minimum.  Consequently, there is no

---

[10]While not applicable here because Defendant was not subject to a mandatory minimum, the Supreme Court subsequently extended *Apprendi* even further, holding that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *See Alleyne*, 133 S. Ct. at 2155.

violation of *Apprendi, Blakely, Booker, or Alleyne* as this line of case law does not apply to Defendant's circumstance.

Defendant therefore fails to meet his burden of showing that counsel's performance in not arguing this case law to the District Court or the Sixth Circuit was constitutionally deficient. As the case law Defendant argues he provided to counsel was not applicable to Defendant's sentencing proceedings, defense counsel did not perform deficiently in failing to argue *Apprendi, Blakely*, *Booker*, or *Alleyne*. Counsel is not required to raise and advocate meritless arguments or objections that have no chance of success. *Lenoir v. Morgan*, No. 12-3461, 2013 Wl 7144097, at *3 (6th Cir. Aug. 26, 2013) (counsel not ineffective for not raising meritless claims); *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999). Defense counsel's performance in not raising this line of case law with the District Court was competent and objectively reasonable.

Further, Defendant cannot establish prejudice. Specifically, if counsel had raised *Apprendi*, *Blakely*, *Booker*, or *Alleyne* as a basis for arguing that the District Court should have submitted to a jury the factual issues involved in determining whether the two enhancements applied, the objection would have been overruled since these cases have no application to the case at bar. Accordingly, this ineffective assistance of counsel argument by Defendant fails to meet either prong of *Strickland*.

### 3.    Counsel argued against the sentencing enhancements

Defendant argues that "[he] told [b]oth my lawyers to raise these grounds, but they simply would not." Defendant does not, however, further articulate the specific arguments he contends he told counsel to raise that were not presented. To the extent he is referring to the *Apprendi, Blakely*, *Booker and/or Alleyne* argument or that his plea was coerced by the offer of a lenient sentence for

his mother, these have been discussed above.  There is no legal basis for such challenges in this case; counsel's performances were reasonable in not raising these arguments at either the trial or appellate levels.  *See Lenoir,* 2013 Wl 7144097, at *3; *Mapes*, 171 F.3d at 427.  To the extent Defendant is arguing counsel should have raised objections to the application of the enhancements, the record demonstrates that both trial and appellate counsel did, in fact, raise these objections at the appropriate times.

As to trial counsel, the record reveals counsel argued extensively at the sentencing hearing against the application of the two enhancements.  Counsel filed objections to the PSR, filed a sentencing memorandum outlining more fully Defendant's objections to their application, and made oral arguments at sentencing.  (See R. 62, 87, 100).  Defendant does not articulate what more trial counsel should have argued.  Counsel's conduct in arguing against the application of these enhancements, as well as her arguments for a sentence below the Guidelines, was objectively reasonable.

Further, a review of Defendant's brief on appeal reveals appellate counsel raised issues regarding the District Court's application of the two enhancements.  *See United States v. Boshears*, No. 11-6239 (6th Cir.), R. 48.  Defendant has not articulated any other issue he asked counsel to raise on appeal that was not raised, nor has Defendant explained why such issue would have been stronger than the appellate claims that were raised.  Moreover, it is well settled that counsel has no duty to raise every nonfrivolous issue that a criminal defendant requests. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983); *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (observing that the "process of 'winnowing out weaker arguments on appeal and focusing on' those most likely to

31

prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy")

(*quoting Jones*, 463 U.S. at 751-52).

Absent something more than Defendant's conclusory allegation that counsel did not raise an

issue on appeal he told him to raise, appellate counsel's determination of which claims to present

falls within counsel's broad range of strategic discretion. *Strickland*, 466 U.S. at 689. Defendant

has not established that trial or appellate counsel's conduct was either constitutionally deficient or

that he suffered prejudice from their decisions regarding which arguments to advance on Defendant's

behalf. Accordingly, this argument, like Defendant's other claims alleging ineffective assistance of

counsel, is without merit.

## III.   CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court

must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the

applicant on his § 2255 claims. A certificate may issue only if he has made a substantial showing

of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained

the requirement associated with a "substantial showing of the denial of a constitutional right" in

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability

in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with

equal force to motions to vacate brought under § 2255). In cases where a district court has rejected

a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id*. "When a district court denies a habeas petition on procedural grounds without reaching the

petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least,

that jurists of reason would find it debatable whether the petition states a valid claim of the denial

of a constitutional right and that jurists of reason would find it debatable whether the district court

was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2255 claims or

conclude that the issues presented are adequate to deserve encouragement to proceed further. *See*

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack*, 529 U.S. at 484). Accordingly, it will

be recommended that a certificate of appealability on Defendant's § 2255 claims be denied upon the

District Judge's entry of his final order in this matter.

## IV.      CONCLUSION AND RECOMMENDATIONS

For the reasons stated herein, **IT IS RECOMMENDED** that:

1.      Defendant's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to § 2255

(R. 103) be **denied;**

2.      a certificate of appealability be **denied** by the District Court in conjunction with the

Court's entry of its final order in this matter;

(3)      Judgment in favor of the United States be entered contemporaneously with the

District Court's entry of its final order; and,

(4)      this action be **stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics

concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also*

Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within

fourteen (14) days after being served with a copy of this Report and Recommendation, any party may

serve and file specific written objections to any or all findings or recommendations for

33

determination, de novo, by the District Court.  Failure to make a timely objection consistent with the

statute and rule may, and normally will, result in waiver of further appeal to or review by the District

Court and Court of Appeals.  *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,*

638 F.2d 947, 950 (6th Cir. 1981).

Dated this 18th day of February, 2015.

**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

G:\DATA\habeas petitions\2255 R&R general\10-59 Boshears R&R.wpd